IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSE A. HERNANDEZ-TIRADO, | : | CIVIL NO. 3:14-CV-2492 |
| | : | |
| Plaintiff | : | (Judge Caputo) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| CRAIG LOWE, et al., | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

### I.     Introduction

This *pro se* prisoner complaint comes before us for consideration of a motion to dismiss filed by defendants Lowe, Frawley, DeMarco, Brady and McNeill. (Doc. 17.)  In this motion, the defendants seeks dismissal of some, but not all, of the plaintiff's claims.  For the reasons set forth below, it is recommended that the motion to dismiss be granted.

### II.    Statement of Facts and of the Case

In the Winter of 2014, the plaintiff, Jose Hernandez-Tirado, was an inmate housed in the Pike County Correctional Facility.   Hernandez-Tirado's current complaints arise out of that period of county incarceration.  Liberally construed, the plaintiff's December 31, 2014, *pro se* complaint advances an array of claims, many

of which involve conduct allegedly undertaken by defendants Lowe, Frawley, DeMarco, Brady and McNeill.

First, sues Warden Lowe, alleging that the warden denied him law library access for four days in December 2014. (Doc. 1, ¶17.)  According to the plaintiff, this brief denial of law library privileges rose to the level of a constitutional infraction, the denial of access to the courts.  The plaintiff makes this assertion, even though his complaint does not identify any otherwise meritorious legal claims which were lost due to his inability to go to the law library between December 4 and 8, 2014.  In addition, Hernandez-Tirado alleges that several correctional defendants, including defendants Frawley, Brady, and McNeill, verbally harassed him at various times while he was housed at the Pike County Correctional Facility.  (Id., ¶¶21, 26-36.)  The plaintiff also alleges that on a single occasion in November 2014, defendant Frawley delivered a food tray to his cell but refused to hand deliver the tray to Hernandez-Tirado forcing him to walk across the cell to retrieve his meal, something that he found painful due to a medical condition, sciatica, which caused him to stumble and fall.  (Id., ¶20.)  The plaintiff's complaint suggests that the manner in which this one meal was delivered to him also assumed a constitutional dimension and violated his right under the Eighth Amendment to be free from cruel and unusual punishment.  Further, Hernandez-Tirado alleges that in one instance in November 2014, defendant

DeMarco ordered him to be placed in a cell without a working toilet for 4 ½ hours. (Id., ¶¶24-25.)  The plaintiff contends that this brief episode also violated his rights under the Eighth Amendment.

The correctional defendants have now moved to dismiss these claims, arguing that Hernandez-Tirado's complaint fails to state a claim upon which relief may be granted with respect to these issues.[1]  This motion has been fully briefed by the parties, (Docs. 18 and 35.), albeit in a summary fashion by the plaintiff, and the motion is now ripe for resolution.  For the reasons set forth below, it is recommended that this motion to dismiss be granted.

## III.   Discussion

### A.   Motion to Dismiss, Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in
> recent years. Beginning with the Supreme Court's opinion in Bell

---

[1]Defendants candidly acknowledge that another claim made by the plaintiff against these defendants, that he was housed for a prolonged period in an excessively cold cell, cannot be disposed of at this time.

> Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)] and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of <u>Twombly</u>, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss.   In <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> at 678.   Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth.   While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.   When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

<u>Id.</u> at 679.

Thus, following <u>Twombly</u> and <u>Iqbal</u> a well-pleaded complaint must contain more than mere legal labels and conclusions.   Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.   As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis.   First, the factual and legal elements of a claim should be separated.   The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.   Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to

> show that the plaintiff has a "plausible claim for relief."  In other words,
> a complaint must do more than allege the plaintiff's entitlement to relief.
> A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

As the court of appeals has observed:  "The Supreme Court in Twombly set forth the 'plausibility' standard for overcoming a motion to dismiss and refined this approach in Iqbal.  The plausibility standard requires the complaint to allege 'enough facts to state a claim to relief that is plausible on its face.' Twombly, 550 U.S. at 570, 127 S.Ct. 1955.  A complaint satisfies the plausibility standard when the factual pleadings 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955).  This standard requires showing 'more than a sheer possibility that a defendant has acted unlawfully.' Id.  A complaint which pleads facts 'merely consistent with' a defendant's liability, [ ] 'stops short of the line between possibility and plausibility of "entitlement of relief." ' " Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011) cert. denied, 132 S. Ct. 1861, 182 L. Ed. 2d 644 (U.S. 2012).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:  "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947.  Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the

assumption of truth.' Id. at 1950.  Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In undertaking this task, the court generally relies only on the complaint, attached exhibits, and matters of public record.  Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007).  The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).  Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also, U.S. Express Lines, Ltd. v. Higgins, 281 F.3d382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment.")  However, the court may not rely on other parts of the record.

Applying these legal guideposts, for the reasons set forth below, it is recommended that this motion to dismiss be granted.

### B.    Many of Hernandez-Tirado's Claims Fail as a Matter of Law

In its current form, Hernandez-Tirado's complaint is fundamentally flawed on a number of scores in ways which compel the dismissal of at least four claims set forth in this pleading:  the access to courts claim; the verbal harassment claims; the single episodic food service delivery claim advanced by the plaintiff; and the plaintiff's complaint that he was held for 4 ½ hours in a cell without a working toilet.  The legal flaws in these four claims are discussed separately below:

### 1.    The Plaintiff's Verbal Harassment Claims Fail

At the outset, the plaintiff may not premise a constitutional claim on alleged verbal harassment, as he apparently attempts to do in this complaint.  This claim warrants only brief consideration since:  "It is well settled that verbal harassment of a prisoner, although deplorable, does not violate the Eighth Amendment.  See McBride v. Deer, 240 F.3d 1287, 1291 n. 3 (10th Cir.2001); DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir.2000); see also Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir.1997) (rejecting the Eighth Amendment claim of a prisoner who alleged that he "was verbally harassed, touched, and pressed against without his consent" because "[n]o single incident that he described was severe enough to be 'objectively, sufficiently serious.' ")."  Robinson v. Taylor, 204 F. App'x 155, 156 (3d Cir. 2006). See, e.g., Rister v. Lamas, 4:CV-10-1574, 2011 WL 2471486 (M.D. Pa. June 21,

2011); Patterson v. Bradford, CIV. 10-5043 NLH, 2011 WL 1983357 (D.N.J. May 20,

2011); Williams v. Bradford, CIV. 10-5120 JBS, 2011 WL 1871437 (D.N.J. May 13,

2011); Ringgold v. Lamby, 565 F. Supp. 2d 549, 553 (D. Del. 2008); Sharpe v.

Costello, 1:06 CV 1493, 2007 WL 1098964 (M.D. Pa. Apr. 11, 2007).   Thus to the

extent that the plaintiff alleges that he was verbally harassed by defendants Frawley,

McNeill and Brady, given that it is "well settled that verbal harassment of a prisoner,

although deplorable, does not violate the Eighth Amendment," Robinson v. Taylor,

204 F. App'x 155, 156 (3d Cir. 2006), and these verbal harassment allegations fail to

state a constitutional claim.   See e.g., Dunbar v. Barone, 487 F. App'x 721 (3d

Cir.2012) (nonprecedential) ("[V]erbal threats or taunts, without more, are not

sufficient to constitute a violation of the Eighth Amendment," also noting that racial

harassment by mimicking Ku Klux Klan hoods failed to state a claim); Mimms v.

U.N.I.C.O.R., 386 F. App'x 32, 35 (3d Cir. 2010)(Verbal harassment of a prisoner,

without more, does not violate the Eighth Amendment); Lindsey v. O'Connor, 327 F.

App'x 319, 321 (3d Cir. 2009)(Verbal harassment of a prisoner, although distasteful,

does not violate the Eighth Amendment).

## 2.   The Plaintiff's Complaint Fails to State a Viable Denial of Access to the Courts Claim

The plaintiff also advances a claim that he was unconstitutionally denied access

to the courts when his law library privileges were allegedly curtailed for four days in

December 2014.  This claim also fails since the plaintiff has not shown that he was denied access to the courts in a fashion which offends the Constitution.  Since 1977, the United States Supreme Court has recognized that inmates have a constitutional right of access to the courts.  Bounds v. Smith, 430 U.S. 817 (1977).  As the Supreme Court initially observed, this right of access to the courts is satisfied when corrections officials facilitate "meaningful" access for those incarcerated, either through legal materials or the assistance of those trained in the law.  Id. at 827 ("[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.")

Two decades later, in 1996, the Supreme Court provided further definition and guidance regarding the scope and nature of this right of access to the courts in Lewis v. Carey, 518 U.S. 343 (1996).  In Lewis, the Court eschewed efforts to define this right in abstract, or theoretical terms, but rather cautioned courts to focus on concrete outcomes when assessing such claims.  As the Court observed:

> Because Bounds did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's . . . legal assistance program is subpar in some theoretical sense. . . . Insofar as the right vindicated by Bounds is concerned, "meaningful access to the courts is the touchstone," id., at 823, 97 S.Ct., at 1495 (internal quotation marks omitted), and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the . . . legal assistance program hindered his efforts to pursue a legal claim. . . . . Although

> Bounds itself made no mention of an actual-injury requirement, it can
> hardly be thought to have eliminated that constitutional prerequisite.
> And actual injury is apparent on the face of almost all the opinions in the
> 35-year line of access-to-courts cases on which Bounds relied . . . .
> Moreover, the assumption of an actual-injury requirement seems to us
> implicit in the opinion's statement that "we encourage local
> experimentation" in various methods of assuring access to the courts.
> Id.,at 832, 97 S.Ct., at 1500.

Lewis v. Casey, 518 U.S. 343, 351-52 (1996).

Thus, following Lewis, courts have consistently recognized several guiding

principles which animate access-to-court claims by prisoners.  First, such claims

require some proof of an actual, concrete injury, in the form of direct prejudice to the

plaintiff in the pursuit of some legal claim.  See, e.g., Oliver v. Fauver, 118 F.3d 175

(3d Cir. 1997); Demeter v. Buskirk, No. 03-1005, 2003 WL 22139780 (E.D. Pa. Aug.

27, 2003); Castro v. Chesney, No. 97-4983, 1998 WL 150961 (E.D. Pa. March 31,

1998).  A necessary corollary to this principle is that, in order to prevail on an access

to the courts claim, a "plaintiff must identify a 'nonfrivolous,' 'arguable' underlying

claim."  Christopher v. Harbury, 536 U.S. 403, 415 (2002). Thus:

> Where prisoners assert that defendants' actions have inhibited their
> opportunity to present a past legal claim, they must show (1) that they
> suffered an "actual injury"-that they lost a chance to pursue a
> "nonfrivolous" or "arguable" underlying claim; and (2) that they have no
> other "remedy that may be awarded as recompense" for the lost claim
> other than in the present denial of access suit.  See Christopher v.
> Harbury, 536 U.S. 403, 415, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002).
> To that end, prisoners must satisfy certain pleading requirements:  The

complaint must describe the underlying arguable claim well enough to show that it is "more than mere hope," and it must describe the "lost remedy." <u>See</u> <u>id.</u> at 416-17, 122 S.Ct. 2179.

<u>Monroe v. Beard</u>, 536 F.3d 198, 205-06 (3d Cir. 2008)

These legal tenets control here, and are fatal to this access to the courts claim as it is currently pleaded for at least two reasons. First, to make such a claim the plaintiff "must describe the underlying arguable [legal] claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.' " <u>Monroe v.</u> <u>Beard</u>, 536 F.3d 198, 206 (3d Cir. 2008). Here, the complaint fails to identify with any specificity lost legal claims or remedies, essential prerequisites to a constitutional tort in this setting.

Further, the plaintiff simply has not alleged actual concrete prejudice to him in the litigation of another case, the essential prerequisite to a constitutional claim in this field. Indeed, it is entirely impossible to discern what conceivable prejudice the plaintiff may have suffered since we do not know what claims may have been lost or forfeited by the plaintiff, and are entirely unable to assess the merits of those potentially lost claims. In short, the complaint is far too vague and speculative to satisfy Rule 8 of the Federal Rules of Civil Procedure. Moreover, the claim fails because, at bottom, it expresses nothing more than the plaintiff's "mere hope" that the outcome of some other, unspecified litigation might have been different had he gone

to the law library for four days in December 2014. This level of generality will not support an access-to-courts claim. Therefore, this claim fails on its merits.

### 3.      The Plaintiff's Isolated Meal and Accommodation Complaints Fail as a Matter of Law

Finally, in their motion to dismiss the defendants seek to dismiss two narrow, specific and isolated Eighth Amendment claims. Specifically, the plaintiff has alleged that on one occasion in November 2014, defendant Frawley delivered a food tray to his cell but refused to hand deliver the tray to Hernandez-Tirado. When the plaintiff was forced to retrieve his meal, a painful medical condition he was experiencing, sciatica, caused him to stumble and fall. (Id., ¶20.) Hernandez-Tirado also asserts that in November 2014, defendant DeMarco ordered him to be placed in a cell without a working toilet for 4 ½ hours. (Id., ¶¶24-25.) The plaintiff's complaint suggests that these two matters assumed a constitutional dimension and violated his right under the Eighth Amendment to be free from cruel and unusual punishment.

Each of these Eighth Amendment claims is judged against settled legal principles, principles which set precise and exacting standards for asserting a constitutional infraction. All of the various claims, however, are governed by the same overarching and animating constitutional benchmarks. As the United States Court of Appeals for the Third Circuit has observed:

The Eighth Amendment protects against infliction of "cruel and unusual
punishment."  However, "not every governmental action affecting the
interests or well-being of a prisoner is subject to Eighth Amendment
scrutiny."  Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 89
L.Ed.2d 251 (1986).  "After incarceration, only the unnecessary and
wanton infliction of pain constitutes cruel and unusual punishment
forbidden by the Eighth Amendment."  Id. (citation and internal
quotations omitted).  "It is obduracy and wantonness, not inadvertence
or error in good faith, that characterize the conduct prohibited by the
Cruel and Unusual Punishments Clause, whether that conduct occurs in
connection with establishing conditions of confinement, supplying
medical needs, or restoring official control over a tumultuous cellblock."
Id. Resolution of an Eighth Amendment claim therefore "mandate[s] an
inquiry into a prison official's state of mind."  Wilson v. Seiter, 501 U.S.
294, 299, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).  Two considerations
define that inquiry.  We must first determine if the deprivation was
sufficiently serious to fall within the Eighth Amendment's zone of
protections.  Id. at 298, 111 S.Ct. 2321.  If not, our inquiry is at an end.
However, if the deprivation is sufficiently serious, we must determine if
the officials acted with a sufficiently culpable state of mind.  Id.  In other
words, we must determine if they were motivated by a desire to inflict
unnecessary and wanton pain.  "What is necessary to establish an
'unnecessary and wanton infliction of pain ...' varies according to the
nature of the alleged constitutional violation."  Hudson v. McMillian,
503 U.S. 1, 5, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

Fuentes v. Wagner, 206 F.3d 335, 344-45 (3d Cir. 2000)

"When an Eighth Amendment claim arises in the context of a challenge to

conditions of confinement, we must determine if prison officials acted with 'deliberate

indifference' to the inmate's health.  Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct.

1970, 128 L.Ed.2d 811 (1994).  The objective inquiry is whether the inmate was

'denied the minimal civilized measure of life's necessities.'  Hudson, 503 U.S. at 9,

112 S.Ct. 995." Fuentes v. Wagner, 206 F.3d 335, 345 (3d Cir. 2000). In this setting, it is clear that:

> The Eighth Amendment prohibits punishments inconsistent with "evolving standards of decency that mark the progress of a maturing society." Estelle v. Gamble, 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting Trop v. Dulles, 356 U.S. 86, 101, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958)). Conditions of prison confinement violate the Eighth Amendment only if they "deprive inmates of the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)

Atkinson v. Taylor, 316 F.3d 257, 272 (3d Cir. 2003).

When courts have in the past considered specific conditions of confinement alleged by inmates under this Eighth Amendment standard, it is apparent that many complaints similar to those advanced here have been found not to "deprive inmates of the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347(1981). For example,"[p]ursuant to the case law related to the denial of bedding, the denial of [an inmate's] mattress for a short period of time does not rise to the level of a constitutional violation." Milhouse v. Gee, No. 09-2134, 2011 WL 3627414, *13 (M.D.Pa. Aug. 17, 2011) citing Lane v. Culp, Civ. No. 05–576, 2007 WL 954101 (W.D.Pa. Mar.28, 2007) (holding that denial of clothing and bedding for period of seven days does not rise to level of constitutional violation); Castro v. Chesney, Civ. No. 97–4983, 1998 WL 767467 (E.D.Pa. Nov. 3, 1998) ("Plaintiff's allegation that he was deprived of a mattress and blanket for a period of two days,

even if proved, would not rise to the level of a constitutional violation."); <u>Stephens v. Cottey</u>, 145 F. App'x 179, 181 (7th Cir. Aug.11, 2005) (holding no Eighth Amendment violation exists where prisoner spent three days without a mattress sleeping on a metal bedframe and five days with no bedframe sleeping on the floor).

Similarly, courts have frequently rebuffed inmate complaints relating to the packaging and presentation of meals.  Thus, "while prisoners are guaranteed a nutritionally adequate diet under the Eighth Amendment, <u>see</u> <u>Ramos v. Lamm</u>, 639 F.2d 559, 571 (10th Cir.1980), there is no constitutional right to hot meals.  <u>See</u> <u>Brown-El v. Delo</u>, 969 F.2d 644, 648 (8th Cir.1992) (finding frivolous prisoner's claim that his constitutional rights were violated when he was served cold food)." <u>Laufgas v. Speziale</u>, 263 F.App'x. 192, 198 (3d Cir. 2008).  Similarly, the "purported deprivation of a single meal is not of such magnitude as to rise to the level of a constitutional violation.  <u>See</u> <u>Robles v. Coughlin</u>, 725 F.2d 12, 15 (2d Cir.1983) (only a substantial deprivation of food to a prisoner sets forth a viable Eighth Amendment claim)." <u>Lindsey v. O'Connor</u>, 327 F.App'x. 319, 321 (3d Cir. 2009).  Furthermore, courts have held that a brief interruption in water service to an inmate's cell does not, by itself, so deprive an inmate of "the minimal civilized measure of life's necessities." <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347(1981), that it constitutes an violation of the Eighth Amendment.  <u>Banks v. Mozingo</u>, 423 F. App'x 123, 127-28 (3d Cir. 2011),

citing <u>Williams v.Delo</u>, 49 F.3d 442, 444–47 (8th Cir.1995) (finding no Eighth

Amendment violation where prisoner was placed in a strip cell without clothes, the

water in the cell was turned off and the mattress removed, and prisoner's bedding,

clothing, legal mail, and hygienic supplies were withheld).

Finally, courts have repeatedly held that inmate Eighth Amendment claims,

which rest upon a brief alleged failure to provide personal hygiene supplies or services

to a prisoner do not state a claim under the Eighth Amendment.  <u>See e.g.</u>, <u>Banks v.</u>

<u>Mozingo</u>, 423 F.App'x 123 (3d Cir. 2011)(denying inmate hygiene complaint as ironic

where inmate engaged in un-hygienic behavior, including smearing feces on cell);

<u>Adderly v. Ferrier</u>, 419 F.App'x 135 (3d Cir. 2011)(denying inmate claim involving

7 day alleged denial of hygienic material); <u>Fortune v. Hamberger</u>, 379 F.App'x  116

(3d Cir. 2010)( denying inmate claim involving 15 day alleged denial of hygienic

material); <u>Benjamin v. Fraser</u>, 161 F.Supp.2d 151, 177 (S.D.N.Y.2001) (two days

without feminine hygiene products and toilet paper did not establish a constitutional

violation); <u>Stead v. Skinner</u>, 10-4526, 2011 WL 3882809, *4 (N.D.Ill., Sept 2, 2011).

Likewise, courts have held that the denial of inmate access to a working toilet or

running water for several hours does not constitute a violation of the Eighth

Amendment.  <u>See, e.g.</u>, <u>Collier v. Adams</u>, 602 F. App'x 850, 851 (3d Cir. 2015)(denial

of running water in cell for 77 hours);  <u>Dixie v. Castro</u>, No. 1:14-CV-01255BAM PC,

2015 WL 521389, at *3 (E.D. Cal. Feb. 9, 2015) citing Hartsfield v. Vidor, 199 F.3d

305, 309–10 (6th Cir.1999) (finding no constitutional violation where prisoner was

not allowed to use toilet, was forced to sit in his own urine and was not provided with

fresh drinking water for two 8–hour periods; noting court had previously held that

deprivations of fresh water and access to a toilet for 20 hours was harsh, but not cruel

and unusual punishment); see also Saenz v. Reeves, 2012 WL 4049975, *14–15

(E.D.Cal. Sept.13, 2012) (denial of toilet access for five and one half hours on one

occasion and four and one half hours on separate occasion not sufficiently serious

deprivation); Cf. Johnson v. Lewis, 217 F.3d 726, 733 (9th Cir.2000) ("[W]e have no

doubt that toilets can be unavailable for some period time without violating the Eighth

Amendment ....")

Judged by these exacting legal standards, Hernandez-Tirado's Eighth

Amendment complaints relating to a single isolated food service incident in which his

meal was not hand-delivered to him, and his concern that he was housed in a cell

without a working toilet for 4 ½ hours fail to state claims upon which relief may be

granted. In this correctional setting the Eighth Amendment simply does not create a

constitutional right to have an inmate's meals hand delivered to him. Nor does the

constitution forbid a brief period of housing in a cell without a working toilet.

Therefore, these allegations also fail to state a claim upon which relief may be granted.

## III.   <u>Recommendation</u>

For the foregoing reasons, IT IS RECOMMENDED that the defendants' motion to dismiss, (Doc. 17.) be GRANTED and the following claims be DISMISSED:  (1) The plaintiff's verbal harassment claims against defendants Frawley, Brady and McNeill; (2) the plaintiff's access-to-courts claim against defendant Lowe; (3) the plaintiff's Eighth Amendment claims relating to a single food service incident in November 2014, and his housing in a cell without a toilet for 4 ½ hours in November 2014.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 13th day of August 2015.

*__S/Martin C.  Carlson__*
Martin C. Carlson
United States Magistrate Judge