## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSE A. HERNANDEZ-TIRADO, | : | CIVIL NO. 3:14-CV-2492 |
| | : | |
| Plaintiff | : | (Judge Caputo) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| CRAIG LOWE, et al., | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

This *pro se* prisoner lawsuit comes before us for consideration of a motion to dismiss filed by Kimberly Montanredes, (Doc. 23.), a defendant who is employed as a prison nurse at the Pike County Correctional Facility.  In the Winter of 2014, the plaintiff, Jose Hernandez-Tirado, was an inmate housed in the Pike County Correctional Facility.  Hernandez-Tirado's current complaints arise out of that period of county incarceration.  Liberally construed, the plaintiff's December 31, 2014, *pro se* complaint advances an array of claims against prison officials, including one claim leveled against defendant Montanredes.

As to defendant Montanredes, the plaintiff's complaint seems to make a narrow, and specific, but somewhat opaque, claim.  (Doc. 1, ¶¶37-40.)  As we construe it, the complaint alleges that Hernandez-Tirado suffered from sciatica.  Hernandez-Tirado

alleges that he received regular treatment for this condition, but states that defendant Montanredes did not deliver his medications to him personally, as she did for other inmates. Instead, the plaintiff was required to go to the dispensary to obtain his medicine. Hernandez-Tirado's complaint then suggests without any further supporting factual narrative that this conduct was either retaliatory or racially discriminatory. (Id.)

Construing the complaint as presenting both Eighth Amendment claims relating to deliberate indifference to the plaintiff's medical needs, as well as discrimination and retaliation claims, the defendant has now moved to dismiss these claims, arguing that Hernandez-Tirado's complaint fails to state a claim upon which relief may be granted with respect to these issues. (Doc. 23.) This motion has been fully briefed by the parties, (Docs. 24 and 35.), albeit in a summary fashion by the plaintiff, and the motion is now ripe for resolution. For the reasons set forth below, it is recommended that this motion to dismiss be granted, without prejudice to the filing of an amended complaint which complies with federal pleading requirements.

## II.   **Discussion**

### A.   **Motion to Dismiss, Standard of Review**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted."

Fed. R. Civ. P. 12(b)(6).  With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years.  Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) continuing with our opinion in <u>Phillips</u> [<u>v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)] and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff.  <u>Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994).  However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).  Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." <u>Associated Gen. Contractors of Cal. v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983).  As the Supreme Court held in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide

some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss.  In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678.  Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of

mere speculation.  As the United States Court of Appeals for the Third Circuit has

stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state
> a claim, district courts should conduct a two-part analysis.  First, the
> factual and legal elements of a claim should be separated.  The District
> Court must accept all of the complaint's well-pleaded facts as true, but
> may disregard any legal conclusions.  Second, a District Court must then
> determine whether the facts alleged in the complaint are sufficient to
> show that the plaintiff has a "plausible claim for relief."  In other words,
> a complaint must do more than allege the plaintiff's entitlement to relief.
> A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

As the court of appeals has observed:  "The Supreme Court in Twombly set

forth the 'plausibility' standard for overcoming a motion to dismiss and refined this

approach in Iqbal.  The plausibility standard requires the complaint to allege 'enough

facts to state a claim to relief that is plausible on its face.'  Twombly, 550 U.S. at 570,

127 S.Ct. 1955.  A complaint satisfies the plausibility standard when the factual

pleadings 'allow[ ] the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged.'  Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S.

at 556, 127 S.Ct. 1955).  This standard requires showing 'more than a sheer possibility

that a defendant has acted unlawfully.'  Id.  A complaint which pleads facts 'merely

consistent with' a defendant's liability, [ ] 'stops short of the line between possibility

and plausibility of "entitlement of relief." ' "  Burtch v. Milberg Factors, Inc., 662 F.3d

212, 220-21 (3d Cir. 2011) cert. denied, 132 S. Ct. 1861, 182 L. Ed. 2d 644 (U.S. 2012).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In undertaking this task, the court generally relies only on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also, U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court

may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment.") However, the court may not rely on other parts of the record.

Applying these legal guideposts, for the reasons set forth below, it is recommended that this motion to dismiss be granted.

## B.   Tirado's Eighth Amendment Claim Fails

At the outset, construing the plaintiff's complaint against Nurse Montanredes as alleging and Eighth Amendment claim involving deliberate indifference to the plaintiff's medical needs, we conclude that the claim, as pleaded, fails to allege facts upon which relief may be granted.  Eighth Amendment claims are judged against settled legal principles, principles which set precise and exacting standards for asserting a constitutional infraction but are governed by the same overarching and animating constitutional benchmarks.  As the United States Court of Appeals for the Third Circuit has observed:

> The Eighth Amendment protects against infliction of "cruel and unusual punishment."  However, "not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986).  "After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Id. (citation and internal quotations omitted).  "It is obduracy and wantonness, not inadvertence

or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." Id. Resolution of an Eighth Amendment claim therefore "mandate[s] an inquiry into a prison official's state of mind." Wilson v. Seiter, 501 U.S. 294, 299, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Two considerations define that inquiry. We must first determine if the deprivation was sufficiently serious to fall within the Eighth Amendment's zone of protections. Id. at 298, 111 S.Ct. 2321. If not, our inquiry is at an end. However, if the deprivation is sufficiently serious, we must determine if the officials acted with a sufficiently culpable state of mind. Id. In other words, we must determine if they were motivated by a desire to inflict unnecessary and wanton pain. "What is necessary to establish an 'unnecessary and wanton infliction of pain ...' varies according to the nature of the alleged constitutional violation." Hudson v. McMillian, 503 U.S. 1, 5, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

Fuentes v. Wagner, 206 F.3d 335, 344-45 (3d Cir. 2000).

Thus while prison officials may violate an inmate's rights under the Eighth Amendment to the United States Constitution by displaying "deliberate indifference" to this inmate's medical needs, to sustain such a claim, an inmate must plead facts which:

[M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. "Deliberate indifference" is a subjective standard under Farmer-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care. In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 105 (1976).  To establish a violation of his constitutional right to adequate medical care in accordance with this standard, an inmate is required to point to evidence that demonstrates (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

"Although this court has defined a medical need as serious if it has been diagnosed by a physician as requiring treatment, we also have recognized: 'Estelle makes clear that if "unnecessary and wanton infliction of pain," ... results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment.' Id. at 347." Atkinson v. Taylor, 316 F.3d 257, 266 (3d Cir. 2003).  Thus, in order to establish a serious medical need the "plaintiff must make an 'objective' showing that the deprivation was 'sufficiently serious,' or that the result of defendant's denial was sufficiently serious.  Additionally, the plaintiff must make a 'subjective' showing that

defendant acted with "a sufficiently culpable state of mind.' See Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)." Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002).   Applying these benchmarks we believe that the plaintiff's presenting medical condition, sciatica, could potentially constitute a serious medical need for purposes of the Eighth Amendment. Edwards v. Gu, No. CIV.A. 05 3178(WGB), 2005 WL 2129879, at *4 (D.N.J. Aug. 31, 2005) (complaints of escalating lower back pain and sciatica might be considered a serious medical need).

However, the presence of a serious medical need, standing alone, does not satisfy the elements of proof for an Eighth Amendment claim.   One must also demonstrate deliberate indifference to that medical need.   Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104.  Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury," White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth

Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted). Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate. Clark v. Doe, 2000 U.S. Dist. LEXIS 14999, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000)("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care").  Thus, such complaints fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference.  See e.g. Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir.1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')". Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997).  Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received; see, e.g., Ham v. Greer, 269 F. App'x 149 (3d Cir. 2008); James v. Dep't of Corrections, 230 F. App'x 195 (3d. Cir. 2007); Gillespie v. Hogan, 182 F. App'x 103 (3d Cir. 2006); Bronson v. White, No. 05-2150, 2007 WL 3033865 (M.D. Pa. Oct. 15, 2007); Gindraw v. Dendler, 967 F.Supp. 833 (E.D. Pa. 1997), particularly where it can be shown that

significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services.  Instead, courts have defined the precise burden which an inmate must sustain in order to advance an Eighth Amendment claim against a healthcare professional premised on allegedly inadequate care, stating that:

> The district court [may] properly dis[miss an] Eighth Amendment claim, as it concerned [a care giver], because [the] allegations merely amounted to a disagreement over the proper course of his treatment and thus failed to allege a reckless disregard with respect to his . . . care.  The standard for cruel and unusual punishment under the Eighth Amendment, established by the Supreme Court in Estelle v. Gamble, 429 U.S. 97, 104 (1976), and its progeny, has two prongs:  1) deliberate indifference by prison officials and 2) serious medical needs.  "It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.' "  "Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation." . . . . [The inmate] alleged no undue delay in receiving treatment and, as the district court noted, the evidence he presented established that he received timely care . . . .  Although [an inmate plaintiff] may have preferred a different course of treatment, [t]his preference alone cannot establish deliberate indifference as such second-guessing is not the province of the courts.

James, 230 F.App'x. at 197-198.(citations omitted).

In short, in the context of the Eighth Amendment, any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment.  Inmates of

Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (quoting Bowring

v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)).

Here, we believe that the spare facts alleged by Hernandez-Tirado do not state

a viable Eighth Amendment claim because the plaintiff does not describe deliberate

indifference to a serious medical need.   Quite the contrary, Hernandez-Tirado's

complaint clearly alleges that he received on-going medical treatment.   Instead, the

plaintiff simply complains that Nurse Montanredes did not deliver this care to him

personally, but rather he was required to go to the prison dispensary to secure

treatment.  Construed in this way, the complaint does not make claims about the nature

and quality of the care the plaintiff received.   Rather, this claim reduces to a dispute

concerning *where* that treatment should have occurred.

Viewed in this light Hernandez-Tirado's complaint fails to state a claim under

the Eighth Amendment.   In fact, courts have repeatedly held that when an inmate's

Eighth Amendment claim entails nothing more than a disagreement concerning which

type of medication to prescribe for a particular ailment, prison officials are entitled to

a judgment in their favor as a matter of law.   See e.g., Gause v. Diguglielmo, 339

F.App'x 132 (3d Cir. 2009)(dispute over choice of medication does not rise to the

level of an Eighth Amendment violation); Innis v. Wilson, 334 F.App'x 454 (3d Cir.

2009)(same); Whooten v. Bussanich, 248 F.App'x 324 (3d Cir. 2007)(same); Ascenzi

v. Diaz, 247 F.App'x 390 (3d Cir. 2007)(same).  If a dispute regarding the type of medication provided for an ailment does not rise to a matter of constitutional dimension, it follows that a disagreement about where that medication is to be dispensed is not cognizable as an Eighth Amendment violation.

### C.      The Plaintiff's Retaliation and Discrimination Claims are Inadequately Pleaded

The plaintiff has also alleged, without any further supporting factual narrative in his complaint that the failure of Nurse Montanredes to deliver medication to him personally in his cell, and the requirement that he go to the prison dispensary to receive treatment, was somehow either retaliatory or racially discriminatory.  Without further well-pleaded factual averments, it is impossible to determine the plausibility of these claims, the touchstone for legal sufficiency of a complaint.  See Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011) cert. denied, 132 S. Ct. 1861, 182 L. Ed. 2d 644 (U.S. 2012)("The Supreme Court in Twombly set forth the 'plausibility' standard for overcoming a motion to dismiss . . . .")  Therefore, it is recommended that these claims, as pleaded, be dismissed.

Turning first to Hernandez-Tirado's retaliation claim, a prisoner claiming that prison officials have retaliated against him for exercising his constitutional rights must first prove the following three elements:  (1) the conduct in which he engaged was

constitutionally protected; (2) he suffered adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial motivating factor in the defendants' conduct.  Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002).  With respect to the obligation to demonstrate that he suffered an adverse action, a plaintiff must demonstrate that he suffered action that "was sufficient to deter a person of ordinary firmness from exercising his rights."  Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000).  Examples of adverse actions that have, in certain cases, been found to support a retaliation claim include filing false misconduct reports, Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003), transferring a prisoner to another prison, Rauser v. Horn, 241 F.3d 330, 333-34 (3d Cir. 2001), and placing a prisoner in administrative custody, Allah, 229 F.3d at 225.  However, it is well-settled that minor inconveniences or *de minimis* actions do not rise to the level of constitutionally cognizable retaliation.  Thaddeus-X v. Blatter, 175 F.3d 378, 396 (6th Cir. 1999)("It is not necessarily true, however, that every action, no matter how small, is constitutionally cognizable.")  As one court has observed:

> The *de minimis* standard . . . achieves the proper balance between the need to recognize valid retaliation claims and the danger of "federal courts embroil[ing] themselves in every disciplinary act that occurs in state penal institutions."  Woods, 60 F.3d at 1166.  The purpose of allowing inmate retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising constitutional rights.  See Crawford-El, 523 U.S. at 588 n. 10, 118 S.Ct. 1584.  Some

> acts, though maybe motivated by retaliatory intent, are so *de minimis* that
> they would not deter the ordinary person from further exercise of his
> rights.  Such acts do not rise to the level of constitutional violations and
> cannot form the basis of a § 1983 claim.

Morris v. Powell, 449 F.3d 682, 686 (5th Cir. 2006).  See, e.g., Pope v. Bernard, No.

10 1443, 2011 WL 478055, at *2 (1st Cir. Feb. 10, 2011).

The third essential element to a retaliation claim is that there be a causal link

between the exercise of a constitutional right and the adverse action taken against the

prisoner.  Rauser, 241 F.3d at 333-34.  To establish this third, and crucial, component

to a constitutional retaliation claim, causation, a plaintiff must make an exacting

showing.  In this setting:

> To establish the requisite causal connection a plaintiff usually must prove
> either (1) an unusually suggestive temporal proximity between the
> protected activity and the allegedly retaliatory action, or (2) a pattern of
> antagonism coupled with timing to establish a causal link.  See Krouse
> v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir.1997);
> Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir.1997).  In the
> absence of that proof the plaintiff must show that from the "evidence
> gleaned from the record as a whole" the trier of the fact should infer
> causation.  Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d
> Cir.2000).

Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).

Moreover, when examining these causation issues, we are specifically admonished

that:

A court must be diligent in enforcing these causation requirements because otherwise a public actor cognizant of the possibility that litigation might be filed against him, particularly in his individual capacity, could be chilled from taking action that he deemed appropriate and, in fact, was appropriate.  Consequently, a putative plaintiff by engaging in protected activity might be able to insulate himself from actions adverse to him that a public actor should take.  The point we make is not theoretical as we do not doubt that public actors are well aware that persons disappointed with official decisions and actions frequently bring litigation against the actors responsible for the decisions or actions in their individual capacities, and the actors surely would want to avoid such unpleasant events.  Thus, it would be natural for a public actor to attempt to head off a putative plaintiff with the unwarranted expenditure of public funds.  Courts by their decisions should not encourage such activity and, by enforcing the requirement that a plaintiff show causation in a retaliation case, can avoid doing so as they will protect the public actor from unjustified litigation for his appropriate conduct.  In this regard we recognize that often public actors such as those in this case must make a large number of decisions in charged atmospheres thereby inviting litigation against themselves in which plaintiffs ask the courts to second guess the actors' decisions.

Id. at 267-68.

Mindful of these concerns, courts have in the past carefully scrutinized inmate claims of retaliation premised solely on circumstantial proof of a temporal proximity between the plaintiff's conduct and allegedly retaliatory acts.  Indeed, this Court has spoken directly to the issue of what must be shown to state a valid complaint in this factual context, noting that:

To establish the causation element of a retaliation claim, a plaintiff must prove that his or her participation in a protected activity motivated the

defendant to perform the retaliatory act.  Ambrose v. Twp. of Robinson, 303 F.3d 488, 493 (3d Cir.2002); Meenan v. Harrison, Civ. A. No. 3:03-CV-1300, 2006 WL 1000032, at *4 (M.D.Pa. Apr.13, 2006) (observing that a plaintiff must demonstrate that the exercise of First Amendment rights "played some substantial role" in the defendant's action).  The temporal proximity of a retaliatory act to a plaintiff's exercise of his or her First Amendment rights is probative, but not dispositive, of the causation element.  Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir.2003); see also Kachmar v. Sungard Data Sys., Inc., 109 F.3d 173, 178 (3d Cir.1997) (stating that "temporal proximity merely provides an evidentiary basis from which an inference can be drawn").  For temporal proximity alone to establish causation, the "timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred." Marasco, 318 F.3d at 512 (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir.1997)) . . . [T]he Third Circuit Court of Appeals has suggested that a temporal proximity of two days is sufficient to establish causation, see Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 & n. 5 (3d Cir.2000), whereas a temporal proximity of ten days is sufficient to establish causation only when accompanied by other evidence of . . . wrongdoing, Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 189 (3d Cir.2003).  This suggests that the temporal proximity must be measured in days, rather than in weeks or months, to suggest causation without corroborative evidence.

Conklin v. Warrington Tp., No. 06-2245, 2009 WL 1227950, *3 (M.D.Pa. April 30,2009)

Applying this standard, courts in civil rights cases have frequently rebuffed speculative efforts to infer causation from temporal proximity when a span of weeks, months or years separated the plaintiff's constitutionally protected conduct from the defendants' alleged acts of retaliation.  Thus, "[o]ur sister courts have held that a temporal proximity of as little as seventeen days was insufficient to establish

causation.  See Killen v. N.W. Human Servs., Inc., No. 06-4100, 2007 WL 2684541, at *8 (E.D.Pa. Sept.7, 2007) (holding that temporal proximity of seventeen days was insufficient to establish causation); see also Farrell, 206 F.3d at 279 n. 6 (suggesting that temporal proximity of seven weeks would be insufficient to establish causation); Smith v. ABF Freight Sys., Inc., No. 04-2231, 2007 WL 3231969, at *11 (M.D.Pa. Oct.29, 2007) (holding that temporal proximity of one and one-half months was insufficient to establish causation); Mar v. City of McKeesport, No. 05-19, 2007 WL 2769718, at *4 (W.D.Pa. Sept.20, 2007) (holding that temporal proximity of three months was insufficient to establish causation)."  Fischer v. Transue, 04-2756, 2008 WL 3981521, *10 (M.D.Pa. Aug. 22, 2008)(holding that temporal proximity of three weeks was insufficient to establish causation).

In this case, as pleaded, Hernandez-Tirado's retaliation claim fails on several scores.  First, the requirement that the plaintiff travel to the prison dispensary to receive medication seems to be, at best, a *de minimis* imposition, which would not be cognizable as a retaliation claim.  Morris v. Powell, 449 F.3d 682, 686 (5th Cir. 2006). Therefore, this action, standing alone, should not form the predicate of any retaliation claim.  Furthermore, the plaintiff has not pleaded facts that would allow for a reasonable inference that this requirement that he go to the dispensary to obtain medicine was causally related to some constitutionally protected activity on his part.

Indeed, we have no information concerning the legal, logical, topical, or temporal relationship between any constitutionally protected activity by the plaintiff, and the imposition of this requirement.  In the absence of any such well-pleaded facts, we cannot conclude that Hernandez-Tirado has stated a plausible retaliation claim, and this claim should be dismissed.

Likewise, the plaintiff's discrimination claim, as pleaded, is legally insufficient. In his complaint Hernandez-Tirado alleges that he is Hispanic, asserts that the nurse treated him differently than others, and then speculates that "discrimination is the only plausible reason for the treatment [he received]."  (Doc. 1, ¶39.)  Thus, the plaintiff describes some allegedly disparate treatment regarding a relatively *de minimis* matter, the location where he and others received medications in the prison.  The plaintiff then speculates without any well-pleaded factual support that this activity reveals invidious intentional discrimination.  On the basis of this speculative inference, unmoored to any well-pleaded facts, we are then invited to find an equal protection violation.

In our view, more is needed to pleaded a Fourteenth Amendment violation in this institutional setting.  "The Equal Protection Clause requires that all people similarly situated be treated alike.  City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).  '[T]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the

State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents .' <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (quotations omitted)." <u>McKeithan v. Kerestes</u>, No. 1:11-CV-1441, 2014 WL 3734569, at *9 (M.D. Pa. July 28, 2014).  Thus, in order for a prisoner: "To succeed on an equal protection claim, [the inmate] must show an intentional or purposeful discrimination by defendants.  <u>Wilson v. Schillinger</u>, 761 F.2d 821, 929 (3d Cir.1985), <u>cert. denied</u>, 475 U.S. 1096 (1986).  This 'state of mind' requirement applies equally to claims involving (1) discrimination on the basis of race, religion, gender, alienage or national original (2) the violation of fundamental rights and (3) classifications based on social or economic factors.  <u>See, e.g.</u>, <u>Britton v. City of Erie</u>, 933 F.Supp. 1261, 1266 (W.D.Pa.1995), <u>aff'd</u> 100 F.3d 946 (3d Cir.1996); <u>Adams v. McAllister</u>, 798 F.Supp. 242, 245 (M.D.Pa.1992), aff'd, 972 F.2d 1330 (3d Cir.1992).  In addition, [the prisoner] must show that []he was similarly situated to, and treated differently than, other inmates at [the] County Prison. . . ." <u>Sarnoski v. Lackawanna Cnty. Prison</u>, No. 3:CV-12-0499, 2012 WL 1107651, at *3 (M.D. Pa. Apr. 2, 2012).  Where a *pro se* prisoner complaint makes an equal protection claim, but lacks factual detail describing these essential elements of proof, the practice of this court has been to dismiss that equal protection claim, without prejudice to permitting

the plaintiff to endeavor to amend his complaint to state a claim upon which relief may be granted.   Sarnoski v. Lackawanna Cnty. Prison, No. 3:CV-12-0499, 2012 WL 1107651, at *3 (M.D. Pa. Apr. 2, 2012).

That is the course we recommend that the Court follow here.   We recommend this course mindful of the fact that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote  Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend is not necessary in a case such as this where amendment would be futile or result in undue delay, Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).   Accordingly, it is recommended that the Court provide the plaintiff with an opportunity to correct these deficiencies in the *pro se* complaint, by dismissing this deficient complaint against defendant Montanredes at this time without prejudice to one final effort by the plaintiff to comply with the rules governing civil actions in federal court, by filing an amended complaint containing any proper claims which he may have.

## III.   **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that defendant Montanredes' motion to dismiss, (Doc. 23.) be GRANTED but without prejudice to

the plaintiff endeavoring to correct the defects cited in this report, provided that the plaintiff acts within 20 days of the entry of any dismissal order.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 14th day of August 2015.

*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge