## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSE A. HERNANDEZ-TIRADO, | : | CIVIL NO. 3:14-CV-2492 |
| | : | |
| Plaintiff | : | (Judge Caputo) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| CRAIG LOWE, et al., | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

On December 31, 2014, the plaintiff, who was then a federal detainee housed in a local jail, the Pike County Correctional Facility, filed a complaint which advanced an array of claims relating to prison conditions, many of which involved conduct allegedly undertaken by correctional defendants at this institution including defendants Lowe, Frawley, DeMarco, Brady and McNeill.  Through the process of litigating a number of motions to dismiss, many of these claims have been dismissed by the Court.  Currently the sole remaining complaint in this case is Tirado's Eighth Amendment allegation that he was housed in a cell during the winter of 2014 under extremely cold conditions without any sheets or blankets.  (Doc. 38.)  The litigation of these prior motions to dismiss also revealed that Tirado was well-aware of both his duty to respond to defense motions and the deadlines for motion responses since

Tirado in the past timely sought extension of these motion deadlines.  (Docs. 28 and 31.)

In the past several months, however, Tirado has become non-responsive and non-complaint in this litigation.  Thus, Tirado failed to comply with deadlines for submitting an amended complaint, a failure which led to the dismissal of some claims and parties with prejudice.  (Docs. 38, 42, and 45.)  Tirado also failed to comply with discovery deadlines set by this Court.  (Doc. 50.)  It is against the backdrop of these failures to litigate claims that the defendants filed a summary judgment motion and brief in this case on May 18, 2016.  (Docs. 52-54.)  In their dispositive motion the defendants argued, in part, that Tirado had indulged in a profound procedural default, in that he had failed to exhaust his administrative remedies with respect to his claim that he was held in an unreasonably cold cell prior to filing this complaint.

With the defendants having filed a motion which highlighted the alleged procedural shortcoming by the plaintiff, Tirado has now compounded this error by failing to respond to this dispositive motion.  Thus, a plaintiff who is alleged to have ignored one set of important procedural rules by failing to exhaust his administrative remedies in prison, has now discounted a second set of cardinal procedural benchmarks by failing to timely file a response to this summary judgment motion.  Since this time for responding to this motion has now passed without any action by

Tirado to litigate the merits of these claims, we will deem the motion ripe for resolution. In the face of this cascading array of procedural failures, for the reasons set forth below, it is recommended that the motion for summary judgment be granted.

## II.  **Discussion**

### A.  **Under The Rules of This Court This Motion to Dismiss Should Be Deemed Unopposed and Granted**

At the outset, under the Local Rules of this Court the plaintiff should be deemed to concur in this motion since the plaintiff has failed to timely oppose the motion, or otherwise litigate this case. This procedural default completely frustrates and impedes efforts to resolve this matter in a timely and fair fashion, and under the Rules of this Court warrants dismissal of the action, since Local Rule 7.6 of the Rules of this Court imposes an affirmative duty on the plaintiff to respond to motions and provides that

> Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief, or, if a brief in support of the motion is not required under these rules, within seven (7) days after service of the motion. *Any party who fails to comply with this rule shall be deemed not to oppose such motion*. Nothing in this rule shall be construed to limit the authority of the court to grant any motion before expiration of the prescribed period for filing a brief in opposition. A brief in opposition to a motion for summary judgment and LR 56.1 responsive statement, together with any transcripts, affidavits or other relevant documentation, shall be filed within twenty-one (21) days after service of the movant's brief.

Local Rule 7.6 (emphasis added).

In this case the plaintiff has not complied with the Local Rules by filing a timely response to this motion.  Therefore, these procedural defaults by the plaintiff compel the Court to consider:

> [A] basic truth: we must remain mindful of the fact that "the Federal Rules are meant to be applied in such a way as to promote justice.  *See* Fed.R.Civ.P. 1.  Often that will mean that courts should strive to resolve cases on their merits whenever possible.  However, justice also requires that the merits of a particular dispute be placed before the court in a timely fashion ...."  McCurdy v. American Bd. of Plastic Surgery, 157 F.3d 191, 197 (3d Cir.1998).

Lease v. Fishel, 712 F. Supp. 2d 359, 371 (M.D.Pa. 2010).

With this basic truth in mind, we acknowledge a fundamental guiding tenet of our legal system.  A failure on our part to enforce compliance with the rules, and impose the sanctions mandated by those rules when the rules are repeatedly breached, "would actually violate the dual mandate which guides this Court and motivates our system of justice:  'that courts should strive to resolve cases on their merits whenever possible [but that] justice also requires that the merits of a particular dispute be placed before the court in a timely fashion'."  Id.  Therefore, we are obliged to ensure that one party's refusal to comply with the rules does not lead to an unjustified prejudice to those parties who follow the rules.

These basic tenets of fairness apply here.  In this case, the plaintiff has failed to comply with Local Rule 7.6 by filing a timely response to this dispositive motion.

This failure now compels us to apply the sanction called for under Rule 7.6 and deem the plaintiff to not oppose this motion.

## B.   Dismissal of this Case Is Also Warranted Under Rule 41

Beyond the requirements imposed by the Local Rules of this Court, Rule 41(b) of the Federal Rules of Civil Procedure authorizes a court to dismiss a civil action for failure to prosecute, stating that:  "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b).  Decisions regarding dismissal of actions for failure to prosecute rest in the sound discretion of the Court, and will not be disturbed absent an abuse of that discretion.  Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir. 2002)(citations omitted).  That discretion, however, while broad is governed by certain factors, commonly referred to as Poulis factors.  As the United States Court of Appeals for the Third Circuit has noted:

> To determine whether the District Court abused its discretion [in dismissing a case for failure to prosecute], we evaluate its balancing of the following factors: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 868 (3d Cir.1984).

Emerson, 296 F.3d at 190.

    In exercising this discretion "there is no 'magic formula' that we apply to determine whether a district court has abused its discretion in dismissing for failure to prosecute." Lopez v. Cousins, 435 F. App'x 113, 116 (3d Cir. 2011)(quoting Briscoe v. Klem, 538 F.3d 252 (3d Cir. 2008))  Therefore, "[i]n balancing the Poulis factors, [courts] do not [employ] a . . . 'mechanical calculation' to determine whether a District Court abused its discretion in dismissing a plaintiff's case.  Mindek v. Rigatti, 964 F.2d 1369, 1373 (3d Cir.1992)."  Briscoe v. Klaus, 538 F.3d at 263. Consistent with this view, it is well-settled that " 'no single Poulis factor is dispositive,' Ware, 322 F.3d at 222, [and it is] clear that 'not all of the Poulis factors need be satisfied in order to dismiss a complaint.'  Mindek, 964 F.2d at 1373." Briscoe v. Klaus, 538 F.3d at 263.  Moreover, recognizing the broad discretion conferred upon the district court in making judgments weighing these six factors, the court of appeals has frequently sustained such dismissal orders where there has been a pattern of dilatory conduct by a *pro se* litigant who is not amenable to any lesser sanction.  See, e.g., Emerson v. Thiel College, supra; Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007); Reshard v. Lankenau Hospital, 256 F. App'x 506  (3d Cir. 2007); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007).

In this case, a dispassionate assessment of the <u>Poulis</u> factors weighs heavily in favor of dismissing this action.  At the outset, a consideration of the first <u>Poulis</u> factor, the extent of the party's personal responsibility, shows that the delays in this case are entirely attributable to the plaintiff, who has failed to respond to defense motions and has otherwise neglected to litigate this case.

Similarly, the second <u>Poulis</u> factor– the prejudice to the adversary caused by the failure to abide by court orders–also calls for dismissal of this action.  Indeed, this factor–the prejudice suffered by the party seeking sanctions–is entitled to great weight and careful consideration.  As the United States Court of Appeals for the Third Circuit has observed:

> "Evidence of prejudice to an adversary would bear substantial weight in support of a dismissal or default judgment." <u>Adams v. Trustees of N.J. Brewery Employees' Pension Trust Fund</u>, 29 F.3d 863, 873-74 (3d Cir.1994) (internal quotation marks and citation omitted).  Generally, prejudice includes "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." <u>Id</u>. at 874 (internal quotation marks and citations omitted). . . .  However, prejudice is not limited to "irremediable" or "irreparable" harm. <u>Id</u>.; <u>see also</u> <u>Ware v. Rodale Press, Inc.</u>, 322 F.3d 218, 222 (3d Cir.2003); <u>Curtis T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co.</u>, 843 F.2d 683, 693-94 (3d Cir.1988). It also includes "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy." <u>Ware</u>, 322 F.3d at 222.

<u>Briscoe  v. Klaus</u>, 538 F.3d at 259-60.

In this case the plaintiff's failure to litigate this claim or comply with court orders now wholly frustrates and delays the resolution of this action.   In such instances, the defendants are plainly prejudiced by the plaintiff's continuing inaction and dismissal of the case clearly rests in the discretion of the trial judge.   Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007) (failure to timely serve pleadings compels dismissal); Reshard v. Lankenau Hospital, 256 F. App'x 506 (3d Cir. 2007) (failure to comply with discovery compels dismissal); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007) (failure to file amended complaint prejudices defense and compels dismissal).

When one considers the third Poulis factor-the history of dilatoriness on the plaintiff's part–it becomes clear that dismissal of this action is now appropriate.   In this regard, it is clear that "'[e]xtensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response . . . , or consistent tardiness in complying with court orders.' Adams, 29 F.3d at 874." Briscoe v. Klaus, 538 F.3d at 260-61 (some citations omitted).   Here, the plaintiff has ignored and failed to respond to a dispositive defense motion.   The plaintiff has also failed to comply with orders of the court.   Thus, the plaintiff's conduct displays "[e]xtensive or repeated delay or delinquency [and conduct which] constitutes a history of dilatoriness, such

as consistent non-response . . . , or consistent tardiness in complying with court orders." <u>Adams</u>, 29 F.3d at 874.

The fourth <u>Poulis</u> factor–whether the conduct of the party or the attorney was willful or in bad faith–also cuts against the plaintiff in this case. In this setting we must assess whether this conduct reflects mere inadvertence or willful conduct, in that it involved "strategic," "intentional or self-serving behavior," and not mere negligence. <u>Adams v. Trs. of N.J. Brewery Emps.' Pension Trust Fund</u>, 29 F.3d 863, 875 (3d Cir.1994). At this juncture, when the plaintiff has failed to comply with instructions of the Court directing the plaintiff to take specific actions in this case, and has violated the Local Rules, the Court is compelled to conclude that the plaintiff's actions are not accidental or inadvertent but instead reflect an intentional disregard for this case and the Court's instructions.

While <u>Poulis</u> also enjoins us to consider a fifth factor, the effectiveness of sanctions other than dismissal, cases construing <u>Poulis</u> agree that in a situation such as this case, where we are confronted by a *pro se* litigant who will not comply with the rules or court orders, lesser sanctions may not be an effective alternative. <u>See, e.g.</u>, <u>Briscoe v. Klaus</u>, 538 F.3d 252, 262-63 (3d Cir. 2008); <u>Emerson</u>, 296 F.3d at 191. This case presents such a situation where the plaintiff's status as a *pro se* litigant severely limits the ability of the court to utilize other lesser sanctions to ensure that

this litigation progresses in an orderly fashion.  In any event, by entering our prior orders, and counseling the plaintiff on his obligations in this case, we have endeavored to use lesser sanctions, but to no avail.  The plaintiff still declines to obey court orders, and otherwise ignores his responsibilities as a litigant.  Since lesser sanctions have been tried, and have failed, only the sanction of dismissal remains available to the Court.

Finally, under Poulis we are cautioned to consider one other factor, the meritoriousness of the plaintiff's claims.  In our view, however, consideration of this factor cannot save this particular plaintiff's claims, since the plaintiff is now wholly non-compliant with his obligations as a litigant.  The plaintiff cannot refuse to address the merits of his claims, and then assert the untested merits of these claims as grounds for denying a motion to sanction him.  Furthermore, it is well-settled that " 'no single Poulis factor is dispositive,' Ware, 322 F.3d at 222, [and it is] clear that 'not all of the Poulis factors need be satisfied in order to dismiss a complaint.' Mindek, 964 F.2d at 1373." Briscoe v. Klaus,  538 F.3d at 263.  Therefore, the untested merits of the non-compliant plaintiff's claims, standing alone, cannot prevent imposition of sanctions.

In any event, as discussed below, many of the plaintiff's claims fail on their merits, yet another factor which favors dismissal of this action.

### C.      Many of The Plaintiff's Claims Fail as a Matter of Law

As we have previously observed, this case presents an extraordinary circumstance. The plaintiff, a prisoner, has sued his former jailers, alleging that they have violated his constitutional rights. However, it appears that the plaintiff has indulged in a profound procedural failure, a failure to exhaust administrative remedies within the prison system with respect to many of these allegations before filing this complaint. Having been cited by the defendants for this profound procedural shortcoming, the plaintiff has compounded this error by failing to respond to the motion for summary judgment. Thus, a plaintiff who is alleged to have ignored one set of important procedural rules, has now discounted a second set of procedural benchmarks.

In this case the plaintiff's failure to timely pursue these administrative remedies–which is undisputed on this record–has substantive significance for the plaintiff since the Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under . . . any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Section 1997e's exhaustion requirement applies to a wide-range of inmate complaints, including damages complaints like those made here grounded in alleged violations of

the Eighth Amendment.  See Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004); Booth v.

Churner, 206 F.3d 289 (3d Cir. 2000).  While this exhaustion requirement is not a

jurisdictional bar to litigation, this requirement is strictly enforced by the courts.  This

rigorous enforcement is mandated by a fundamental recognition that § 1997e's

exhaustion requirement promotes important public policies.  As the United States

Court of Appeals for the Third Circuit has noted:

> Courts have recognized myriad policy considerations in favor of
> exhaustion requirements.  They include (1) avoiding premature
> interruption of the administrative process and giving the agency a chance
> to discover and correct its own errors; (2) conserving scarce judicial
> resources, since the complaining party may be successful in vindicating
> his rights in the administrative process and the courts may never have to
> intervene; and (3) improving the efficacy of the administrative process.
> Each of these policies, which Congress seems to have had in mind in
> enacting the PLRA, is advanced by the across-the-board, mandatory
> exhaustion requirement in § 1997e(a). ... [A] comprehensive exhaustion
> requirement better serves the policy of granting an agency the
> "opportunity to correct its own mistakes with respect to the programs it
> administers before it is haled into federal court."  Moreover, "even if the
> complaining prisoner seeks only money damages, the prisoner may be
> successful in having the [prison] halt the infringing practice" or fashion
> some other remedy, such as returning personal property, reforming
> personal property policies, firing an abusive prison guard, or creating a
> better screening process for hiring such guards.  And when a prisoner
> obtains some measure of affirmative relief, he may elect not to pursue his
> claim for damages.  In either case, local actors are given the chance to
> address local problems, and at the very least, the time frame for the
> prisoner's damages is frozen or the isolated acts of abuse are prevented
> from recurring.  An across-the-board exhaustion requirement also
> promotes judicial efficiency. . . .  Moreover, even if only a small
> percentage of cases settle, the federal courts are saved the time normally

spent hearing such actions and multiple appeals thereto. . . . In cases in which inmate-plaintiffs exhaust their remedies in the administrative process and continue to pursue their claims in federal court, there is still much to be gained.   The administrative process can serve to create a record for subsequent proceedings, it can be used to help focus and clarify poorly pled or confusing claims, and it forces the prison to justify or explain its internal procedures.   All of these functions help courts navigate the sea of prisoner litigation in a manner that affords a fair hearing to all claims.

Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000)(citations omitted).

Because of the important policies fostered by this exhaustion requirement, it has been held that there is no futility exception to § 1997e's exhaustion requirement.   Id. Instead, courts have typically required across-the-board administrative exhaustion by inmate plaintiffs who seek to pursue claims in federal court.

Moreover, courts have also imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004).   Applying this procedural default standard to § 1997e's exhaustion requirement, courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court.   See, e.g., Booth v. Churner, 206 F.3d

289 (3d Cir. 2000); <u>Bolla v. Strickland</u>, 304 F. App'x 22 (3d Cir. 2008); <u>Jetter v. Beard</u>, 183 F. App'x 178 (3d Cir. 2006).

This broad rule favoring full exhaustion admits of one, narrowly defined exception.  If the actions of prison officials directly caused the inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement.  <u>See</u> <u>Camp  v. Brennan</u>, 219 F.3d 279 (3d Cir. 2000). However, case law recognizes a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." <u>Davis v. Warman</u>, 49 F. App'x 365, 368 (3d Cir. 2002).  Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances", <u>Harris v. Armstrong</u>, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of  failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." <u>Davis v. Warman</u>, <u>supra</u>,  49 F. App'x at 368.  <u>See also</u> <u>Brown v. Croak</u>, 312 F.3d 109, 110 (3d Cir. 2002) (assuming that prisoner with failure to protect claim is entitled to rely on instruction by prison officials to wait for outcome of internal security investigation before filing grievance); <u>Camp v. Brennan</u>, 219 F.3d 279, 281 (3d Cir. 2000) (exhaustion requirement met where Office of Professional Responsibility fully examined merits of excessive force claim and uncontradicted correctional officers impeded filing of grievance).

However, in the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances, inmate requests to excuse a failure to exhaust are frequently rebuffed by the courts. Thus, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005). Nor can an inmate avoid this exhaustion requirement by merely alleging that the corrections grievance policies were not clearly explained to him. Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002). Furthermore, an inmate's confusion regarding these grievances procedures does not, standing alone, excuse a failure to exhaust. Casey v. Smith, 71 F. App'x 916 (3d Cir. 2003). Moreover, an inmate cannot cite to alleged staff impediments to grieving a matter as grounds for excusing a failure to exhaust, if it also appears that the prisoner did not pursue a proper grievance once those impediments were removed. Oliver v. Moore, 145 F. App'x 731 (3d Cir. 2005)(failure to exhaust not excused if, after staff allegedly ceased efforts to impede grievance, prisoner failed to follow through on grievance).

Thus, in this setting, the Prison Litigation Reform Act requires that an inmate fully exhaust his administrative remedies before proceeding into federal court, an administrative exhaustion requirement which entails full compliance with grievance

procedures and timelines.  Judged against these benchmarks, this complaint fails since the defendants have asserted, without contradiction by the plaintiff, that the remaining matters set forth in the complaint have never been fully and properly exhausted within the prison grievance system.  This failure to exhaust is fatal to this case, and compels dismissal of the remaining conditions of confinement claims made by Tirado in this action.

In addition, we note that it appears from the summary judgment pleadings that the plaintiff admits that defendants DeMarco, Brady, and McNeil had "nothing to do with the cold," his sole remaining conditions of confinement claim.  (Doc. 53, ¶12.) This concession compels dismissal of these defendants from this lawsuit. Constitutional tort liability is personal in nature and can only follow from personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).  Thus, a plaintiff may not simply name an official in the caption of the case, and then seek to hold that official personally liable based upon the official's status without making any specific factual allegations about these defendants in the body of this pleading.  This cursory style of pleading is plainly inadequate to state a claim against a prison supervisor and compels dismissal of these defendants.  Hudson v. City of McKeesport, 244 F. App'x

519 (3d Cir. 2007) (affirming dismissal of defendant who was only named in caption of case.)  Therefore, in the absence of pleadings or proof linking these defendants to this sole remaining claim, defendants  DeMarco, Brady, and McNeil are entitled to be dismissed from this lawsuit.

Thus, a merits analysis reveals that  the remaining claims advanced in this case are subject to dismissal.  Therefore, we find that all of the <u>Poulis</u> factors call for dismissal of this case.

## III.   Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that  the defendant's motion for summary judgment (Doc. 52.), be GRANTED and the plaintiff's complaint be dismissed.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions  of  the  report  or  specified  proposed  findings  or recommendations to which objection is made and may accept, reject, or

modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 8th day of July 2016.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge